ISHAM HARRISON *et al.*

*v.*

POLAR STAR LODGE No. 652.

*Filed at Mt. Vernon January 25, 1886.*

1. STATUTE OF FRAUDS—*parol agreement to convey lot—performance to take a case out of the statute.* The owner of lots in a town laid out by him, verbally agreed with a lodge to convey to it one of the lots in consideration it would remove a building owned by it, and put the same on such lot, which was done at a cost of $150, and the lodge made other valuable improvements on the premises: *Held*, that the verbal agreement was not void under the Statute of Frauds, there having been full performance on the part of the purchaser.

2. SPECIFIC PERFORMANCE—*whether enforced—generally.* A suit for the specific performance of a contract to convey land is addressed to the sound legal discretion of the court, and the court will be governed to a great extent by the facts of each case. Equity will withhold its aid if there is anything that makes it unconscionable, from change of circumstances, lapse of time, or otherwise, that the party should have an execution of his agreement.

3. SAME—*in case of a new contract changing the rights of the parties.* A masonic lodge, being entitled to a deed for a lot verbally given it in consideration of its putting a building thereon, procured the holder of the legal title, the vendor, to make an advance of $459 to satisfy a debt it owed, and agreed, if he would pay the debt, to give him possession of the lot and all the buildings thereon, except the lodge room in the second story, and retain the title as security for the money so advanced, reserving a right to redeem by paying him the sum advanced, by a day named; and it was agreed that if payment was not made by that day, then the lot and buildings should be the property of the original vendor: *Held,* that by this agreement the equities of the parties were changed, and the contract to convey rescinded, and it would not be specifically enforced.

4. RESCISSION OF CONTRACT—*by novation.* Where the parties to a contract come to fresh agreement of such a kind that both can not stand together, the effect of the second agreement is to rescind the first. When an agreement is thus rescinded by novation, it loses its individuality, and is merged in the new contract. Any circumstance or course of conduct from which it can be clearly deduced, an agreement to put an end to the original contract will amount to a rescission, and the rescission or novation may be proved by parol.

APPEAL from the Circuit Court of Franklin county; the Hon. D. M. BROWNING, Judge, presiding.

Mr. F. M. YOUNGBLOOD, for the appellants:

The answer shows a rescission of the contract rightfully made, and a bar to the specific performance sought. Fry on Specific Per. 400, 405.

Applications for specific performance are addressed to the sound legal discretion of the court, and the court will be governed to a great extent by the facts and merits of each case. *Fish* v. *Leser,* 69 Ill. 394; *McCabe* v. *Crosier,* id. 501.

It will not be decreed unless the contract has been entered into with perfect fairness and without misapprehension, or

where it will be inequitable or unjust to do so. *Proudfoot v. Wightman,* 78 Ill. 553.

Now, I insist that it would be inequitable and unjust to compel appellants to convey the lot in question to appellee, unless it complies with its subsequent contract. A party can not have the specific performance of a contract unless he shows clearly his right to the relief he seeks. *Brink v. Steadman,* 70 Ill. 241.

Specific performance will not be enforced if there is anything that makes it unconscionable, from change of circumstances, lapse of time, or otherwise, to enforce it. *Kimball v. Took,* 70 Ill. 553. And see *Mitchell v. King,* 77 id. 462. See, also, *Bowman v. Cunningham,* 78 Ill. 48.

Parties who voluntarily abandon or change a contract, can not thereafter have it specifically performed. (*Morrill v. Colehour,* 82 Ill. 618.) Or if it appear that the agreement has been abandoned, a specific performance will be denied. *Hale v. Bryant,* 109 Ill. 34; *Worden v. Crist,* 106 id. 326.

Mr. THOMAS J. LAYMAN, for the appellee:

Equity looks upon things agreed to be done as done, and therefore a vendee is treated as a trustee for the purchaser of the estate sold. *Green v. Smith,* 1 Atk. 572; *Craig v. Leslie,* 3 Wheat. 578.

The vendee is, in contemplation of equity, actually seized of the estate, and is therefore subject to any loss which may happen to it between the agreement and conveyance, and will enjoy any benefit which may accrue in the same interval. As a consequence, he may sell or charge the estate before conveyance is executed. *Seton v. Slade,* 7 Ves. Jr. 205; *Winged v. Lofebury,* 2 Eq. Ca. Abr. 32; *Baden v. Pembroke,* 2 Vern. 213.

A legal mortgage of lands is a conveyance of lands by the debtor to the creditor as a pledge and security for repayment, etc. 2 Brown's Law Dic. 189; 1 Hilliard on Mortgages, 1.

It is a rule of equity that a party is bound to convey the title which he sells. *Cooper* v. *Tyler*, 46 Ill. 465.

But again, if Harrison had any lien it was not due until the 25th of December, 1882, and he deeded the lot to Brown in August, 1882, before his debt was due, and it was not necessary for appellee to tender payment after he made the deed to Brown, as Harrison then had no power to make a deed. And this inability to perform is a good excuse on the part of the purchaser for not tendering the last payment. *Runkle* v. *Johnson*, 30 Ill. 332.

Wherever one obtains or withholds land in fraud of another, equity will decree a trust. Fraud should be suppressed, and not encouraged. *Jenkins* v. *Eldridge*, 3 Story, 181; *Morey* v. *Hernick*, 6 Harr. 125; Hill on Trustees, 91, 144.

Constructive trusts are independent of agreement, and may be established by parol evidence. *Church* v. *Sterling*, 16 Conn. 388.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

This was a bill filed by appellee, in the circuit court of Franklin county, for the specific performance of a contract. The bill alleges that appellee owned a piece of land in that county, and in 1872 erected a two-story building thereon at a cost of about $1300, using the upper story for a lodge room and renting the lower story for a retail store; that in 1879 a railroad company built its road through the county, and located a depot about three-quarters of a mile from the building, the station at that point being called Mulkeytown; that the land at and around the station, and upon which the depot was located, was owned by appellant Harrison, who made a town plat or subdivision into blocks and lots, and had it regularly acknowledged and recorded; that Harrison, besides owning a large number of the lots, owned also a farm that adjoined the town plat, and on which he lived, and in the early part of 1880, being a member of appellee, agreed to

convey to appellee lot 2, in block D, in Mulkeytown, if appellee would remove its building from where it stood, to and upon said lot 2; that accordingly the lodge did remove its building to and upon lot 2, in July, 1880, and by reason thereof, paid out $150 for repairs, and after the removal built two new rooms at a cost of $140, and went into possession of the lot and building at once, and remained in possession until August 3, 1882, and is still in possession of the upper room; that before the removal, the lot was not worth over $35, and if it had remained vacant, would not at any time have been worth over $45; that there were few buildings in the town then, but that building and business have increased since then, and that lot 2, with the building thereon, is now worth $1000; that Harrison has refused to make a deed of the lot to the lodge, as agreed, and that he and his wife made a conveyance of the lot to Elias J. Brown on August 3, 1882, but that Brown was a member of the lodge, and had full notice of Harrison's agreement with it, and of the removal in pursuance thereof, and of all of the rights of the lodge thereunder; that upon receiving his deed, Brown went into possession of the lot and all of the building except the upper room occupied by appellee, and threatens to put appellee out of that unless he is paid rent; that the use of the lot and building, except such upper room, has been worth $15 per month since August 3, 1882, and that since that date appellant has had such use. The bill, which makes Harrison and his wife, and Brown, defendants thereto, waives answer under oath, and prays that Brown be enjoined from selling or incumbering the lot, or interfering with complainant's possession of the lodge room, and that defendants be required to make a deed of the lot to complainant, and to account for the use of the premises, etc.

The first answer filed by appellants was excepted to, and the exceptions were sustained. Thereupon a further and amended answer was filed, to which, also, exceptions were

taken and sustained. The decree of the court below recites that defendants "elect to stand by their joint and several answers and amended answer." We do not understand that the exceptions question the fullness of the amended answer, but simply deny that certain new and additional matters set up therein constitute a legal defence to the case made by the bill. No replication was filed to the answer, and no proofs were taken or heard in the cause. The amended answer admitted the material facts alleged in the bill, and the court below sustained the exceptions to the new matters set up by the defendants, and rendered a decree in accordance with the prayer of the bill. We think that the court erred in sustaining the exceptions, and that the defence presented by the answer is a good one.

The decree rendered by the court below would have been correct if the answer had stopped with an admission of the allegations contained in the bill, for although Harrison's agreement for the sale of the lot to the lodge was a verbal one, yet it was not void under the Statute of Frauds, for the reason that the lodge took possession of the lot and made valuable improvements thereon, and paid the purchase price by the removal of the building to the place agreed upon. Evidently the consideration to be received by Harrison was the increased value which would accrue to the balance of his property by reason of appellee's location on lot 2. However, respondents below did not deny the agreement charged against them, nor did they deny that they would have been liable to carry out the agreement had it not been for the new arrangement which they allege to have been made. In their answer they state as reasons why the lot was not conveyed to appellee, that when the building was removed to lot 2, the lodge owed a debt of $459.15 to one Means; that on February 4, 1882, the lodge agreed with Harrison, by written resolution adopted at one of its meetings and spread upon its minutes, that if he would pay the debt to Means he should have im-

mediate possession of the lot and all of the building except the lodge room in the second story, and should use the rents to pay himself interest on his advances, and might arrange with appellee's tenants for certain ware-rooms built by them on the premises, and that appellee should have the right to redeem said building and lot by paying Harrison the amount he should so advance, by December 25, 1882; but if such payment should not be made by that day, then the lot and building should be the property of Harrison absolutely, and appellee should "part with all its interest in said lot and building;" that appellant Harrison did pay the debt to Means in a few days, and thereupon took possession as agreed; that he sold and conveyed the property to Brown in August, 1882, but with the understanding that Brown was to deed it to appellee in case appellee should pay Harrison by December 25, 1882, the money advanced by him; that the payment to Means and the taking of possession by Harrison were reported to appellee in March, 1882, and approved by it on its records; that Harrison bought from the tenants their ware-rooms, as trade fixtures, and paid for them $150; that the conveyance to Brown was made with the knowledge and consent of appellee; that appellee wholly failed to pay Harrison the money within the time limited, and has never offered to pay it to him since, and has never requested a deed of either him or Brown; that Brown has been in possession of the lot and lodge room since August, 1882; that since December 25, 1882, appellee has paid Brown rent for the lodge room, and thereby recognized him as its landlord; that Brown has made improvements on the lot costing $300, with appellee's knowledge and consent; that Harrison never refused to convey said lot before February 4, 1882, and that he and Brown have been willing to convey it at any time since, upon the payment to Harrison of the money advanced by him, and that they are yet willing to convey it to appellee if it will pay the $459.15, and the cost of the trade fixtures and of the improvements.

Surely the facts thus recited would, if proven, constitute a good defence, and it was wrong to deprive appellants of the opportunity of proving them. If they are true, appellants should not be decreed to convey the premises to appellee. Courts of equity will not always enforce the specific performance of a contract. Such applications are addressed to the sound legal discretion of the court, and the court must be governed, to a great extent, by the facts of each case as it is presented. (*Fish* v. *Leser*, 69 Ill. 394.) Equity will withhold its aid if there is anything that makes it unconscionable, from change of circumstances, lapse of time, or otherwise, that the party should have an execution of his agreement. (*Kimball* v. *Tooke*, 70 Ill. 553.) . According to the new matters set up in the answer, Harrison never parted with the legal title to the lot. After the removal of the building he held it in trust for appellee. He could be called upon to make a deed, provided no such change of circumstances occurred as would make it inequitable for him to do so. But while he was thus holding the legal title, appellee, the equitable owner thereof, instead of demanding a conveyance from him, requested of him an advance of money, and authorized him to continue to hold the title as a security for such advance. The nature of his trust changed. A new equity intervened. Before the payment to Means he held the title in trust, to be deeded to the equitable owner upon demand made; after the payment he held it in trust to secure a debt from the equitable owner to himself. So long as that debt remained unpaid, it was not right to require him to make a deed to the lodge. If Harrison had deeded the property to the lodge prior to February 4, 1882, and had made a loan to the lodge on that day, and had taken back from it to himself a deed which, though absolute on its face, was understood between them to be merely a mortgage to secure the payment of a loan, he could not be called upon for a re-transfer of the title until his loan was paid. The case is not different because, being

already vested with the title, he is allowed to keep it as a security for the loan.

A new contract was made between appellee and Harrison, which rescinded the old contract and was a bar to its performance. Where the parties to a contract come to a fresh agreement of such a kind that the two can not stand together, the effect of the second agreement is to rescind the first. This is one form of *novatio* in the Roman law. When an agreement is thus rescinded by novation, the contract in existence prior to the novation loses its individuality, and becomes merged in the new contract. (Fry on Specific Performance, sec. 998, *et seq.*) Any circumstances or course of conduct from whence can be clearly deduced an agreement to put an end to the original contract, will amount to a rescission of it. (Idem. sec. 1003.) And the rescission or novation may be by parol. (Idem. secs. 1000 and 1017.) Appellee passed a resolution, by the terms of which it agreed to refund the $459.15 to Harrison by December 25, 1882, and in default of its so doing, that Harrison might become the absolute owner of the house and lot then held by him. This resolution was reduced to writing. Appellee has never repaid the money, and it would be unjust to give it both the money and the property.

Brown does not claim to be an innocent purchaser without notice. He admits that he took his deed with notice of appellee's rights, and he and Harrison both express their willingness to convey the property to the lodge upon its payment to them of the advances made by them for debts, outlays and improvements. The averments in the answer are to the effect that the property, independent of the improvements thereon made and paid for by appellants, was not worth much more than the amount of Harrison's advance.

In *Worden* v. *Crist,* 106 Ill. 326, Crist sold a piece of land to Worden, and gave a bond for a deed. The purchase money was all paid up, and the legal title was in the vendor, or his

son for him. Nothing remained to be done except a conveyance·of the title to the vendee. Before this was done, however, Worden borrowed $1000 of a bank, and induced Crist to sign a note as surety for the loan, and agreed that Crist should hold the title, to indemnify himself against his liability as such surety. This court there held that the agreement was not void under the Statute of Frauds, as not being in writing, and that if Worden, who did not pay the note, but suffered it to be proved up against Crist's estate, "had filed his bill for specific performance, and the agreement had been set up and proved," it would have been inequitable "to reject the defence and decree the relief." The principles announced in *Worden* v. *Crist* are applicable to the case at bar, and support the position that the exceptions to the amended answer should not have been sustained.

The decree of the court below is reversed, and the cause remanded for further proceedings in accordance with this opinion.

*Decree reversed.*