## TAYLOR v. WHITE RIVER VALLEY RY. CO.

In an action against a railway company for breach of agreement to avoid interference with irrigation ditches crossed by it, motion for directed verdict on the ground that the agreement was superseded by the right of way deed was sufficient.

The rule that a deed merges prior negotiations or contracts relating to the property is subject to exceptions.

A contract reciting that as part consideration for conveyance of a railway right of way the company would so maintain the owner's irrigation ditches crossed by it as not to interfere with the

irrigation was not merged by deeds subsequently executed granting the right of way and releasing the company from damage resulting to the land not taken, as affecting the owner's right to recover for breach of the contract.

Smith, P. J., and McCoy, J., dissenting.

(Opinion filed June 21, 1911.)

Appeal from Circuit Court, Pennington County. Hon. LEVI McGEE, Judge.

Action by Charles R. Taylor against the White River Valley Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

*J. D. Elliott, Chas. E. Vroman,* and *Charles W. Brown,* for appellant. *Buell & Gardner* and *Chauncey L. Wood,* for respondent.

CORSON, J. This is an appeal by the defendant from a judgment rendered in favor of the plaintiff. The complaint in the action, after alleging the incorporation of the defendant, further alleges: That the plaintiff is, and for a long time prior to the 27th day of March, 1906, was, the owner and in possession of certain described property situate in Pennington county, S. D., describing the property. "That thereafter, and on or about the 27th day of March, 1906, the defendant purchased a right of way over and across the said premises for the construction and maintenance of a railroad, and as part of the consideration for the conveyance to the said defendant of said right of way the said defendant covenanted and agreed with the said plaintiff that the said defendant would maintain the irrigating ditches of the plaintiff across the said right of way so granted, and conveyed to the defendant in such a manner as not to interfere with the proper irrigation of the said premises of the plaintiff. That at and prior to the said date the plaintiff had, at a large cost and expense, built and constructed an irrigation system over and across said premises, and had, prior thereto, conducted water upon the greater portion of said premises. That it was the duty of the said defendant so to construct and build its said railroad as not to interfere with the proper irrigation of the said property, but the said defendant, disregarding its obligation to the plaintiff, so carelessly and negligently con-

ducted itself in the premises, and so carelessly and negligently constructed its said railroad and grade over and across the said premises of the plaintiff, as to destroy the irrigating ditches and flumes of the plaintiff, thereby rendering it impossible for plaintiff to irrigate his said premises during the year 1906, by reason whereof plaintiff's crops on said premises were damaged and destroyed, all to plaintiff's damage in the sum of five thousand ($5,000) dollars. Whereof plaintiff demands judgment against the defendant for the said sum of five thousand ($5,000) dollars, and for costs and disbursements herein."

The defendant, by its answer, admitted the incorporation of the defendant, and that the plaintiff "was the owner and in possession of" the property described in the complaint. The defendant, for a second defense, alleged, in substance, that on the 14th day of April, 1906, the plaintiff and his wife, for an in consideration of $583 to them in hand paid by the defendant, the receipt whereof was by them duly acknowledge, did, by their deed, under seal, grant, bargain, sell, and convey to the defendant, its successors and assigns, a strip of land, 100 feet wide, extending across from the east side to the west side of the premises therein described, and thereby forever warranting and defending the title to said premises thereby conveyed, against the lawful claims of any persons whomsoever; that in and by said deed, and for the consideration aforesaid, the plaintiff and his wife did release all damages and claims thereto, to all their other lands, by reason of or occasioned by the location, construction, and operation of said railway over and upon the said premises thereby conveyed; "and that the said grantors, in and by said deed, and for the consideration aforesaid, for themselves and for their heirs and assigns, did further covenant and agree to and with this defendant that said grants are and were upon no other consideration than that named in said deed; that neither this defendant nor its agents have made any agreement, promise, or condition, verbal or written, for or relating to any crossing, passageway, or other privilege, over, across or under said railway, and that the right thereto shall be only that conferred by statute, or by an instrument in writing under the corporate seal of said railway company; a copy of which

said deed, together with the indorsements and filings thereon, is hereto annexed, marked 'Ex. A.,' and made a part of this answer. And this defendant further avers and says that the said deed is the only covenant or agreement at any time made by this defendant to or with the plaintiff, with reference to the matters and things alleged or referred to in complaint. Wherefore, this defendant prays that the plaintiff take nothing by this action, and that the defendant be dismissed hence with its costs."

Another action was commenced by the plaintiff against the defendant in which the complaint and answer are substantially the same, except one was for damages claimed to have been sustained by the plaintiff for the year 1906 and the other for damages sustained by the plaintiff for the year 1907. The two actions were consolidated and tried together.

It is disclosed by the record that on March 27, 1906, J. L. Hewitt, right of way agent of the defendant, executed the following instrument, to-wit: "This is to certify that it is part of the consideration in deed conveying right of way to White River Valley Railway over lands owned by or occupied by C. R. Taylor, the said Railway Co. shall so maintain his ditches across said right of way as not to interfere (with) the proper irrigation of the property. Mullen, March 27, '06. J. L. Hewitt, Rt. of Way Agent."

It further appears from the deed executed by the plaintiff to the defendant, on the 14th day of April, 1906, that it contains the warranty and agreement set out in the answer. It is further disclosed by the record that a bill of exceptions was settled, but no motion for a new trial was made in the action and that at the close of all the evidence the defendant moved for the direction of a verdict upon the following grounds, in substance, that it appears by the undisputed evidence that the contract signed by Hewitt, the right of way agent, was executed on the 27th day of March, 1906, and prior to the execution and delivery of the warranty deed made by the plaintiff and his wife to the defendant, dated April 14, 1906, and that the legal effect of the said contract evidenced by said deed, completely covering the same subject-matter and made by the

same parties, but containing terms inconsistent therewith, so that the two cannot stand together, is and was to rescind and supersede the earlier contract and to constitute the said deed the only agreement of the parties on the subject; and that the said prior agreement was *merged* in the said deed of warranty afterwards executed, and was rescinded and superseded thereby. The counsel then proceeded to state the terms of the deed, and further state that the irrigating ditch of the plaintiff is an artificial ditch, "and is not a stream of water, water course, or canal, within the meaning of section 497 of the Civil Code," and concludes "that the defendant has not been guilty of any breach of contract, or violated any statutory duty imposed upon it as a railroad corporation, and is not liable to the plaintiff in any sum or any manner whatever." The motion was overruled by the court and exception duly taken. Numerous errors are assigned, but the only one that will be considered in this case, in view of the fact that there was no motion for a new trial made therein, is that the court erred in overruling the defendant's motion for the direction of a verdict at the close of all the evidence.

It is contended by the appellant that the motion for the direction of the verdict should have been granted for the reason, first, that "the contract made March 27, 1906, at Mullen, Nebraska, by the right of way agent, was merged in the deed of warranty and release of damages afterwards executed, and such deed is a bar to this action"; and, second that "an artificial irrigation ditch is not a stream of water, water course, or canal within the meaning of section 497 of the Civil Code."

[1] It is contended by the respondent, first, that "the motion to direct a verdict upon the grounds assigned is not good, and in the absence of a motion for new trial there is nothing to review;" second, that "the sufficiency of the evidence to sustain the verdict cannot be reviewed in the absence of a motion for a new trial;" third, that "the contract made March 27, 1906, at Mullen, Nebraska, by the right of way agent was not *merged* in the deed of warranty and release of damages afterwards executed by respondent and wife;" and fourth, that "as to whether an artificial

irrigation ditch is a stream of water, water course, or canal within the meaning of section 497 of the Civil Code, is not an issue" in this action, for the reason that the plaintiff is not claiming damages under and by virtue of that section, but under the contract alleged to have been made by the right of way agent on March 27, 1906. We are unable to agree with counsel for respondent that the appellant's motion to direct a verdict did not sufficiently state the grounds of the motion. It is very lengthly, and fully sets out the grounds of the motion to the effect that the contract of March 27th, made by the right of way agent, was *merged* and superseded by the deed executed by the plaintiff and wife on the 14th day of April, 1906.

[2] It is also contended by respondent that the first and remaining reason assigned in appellant's motion to direct a verdict is that the right of way deed executed by respondent and wife to the railway company on the 14th day of April, 1906, merged and superseded the contract, Exhibit C, executed by the right of way agent of the railway company to respondent on March 27, 1906, but appellant nowhere contends that the right of way deed executed by Frances A. Ware and husband for a right of way over the greater part of these lands, dated at the same time and place as the contract, Exhibit C, in any respect or in any manner, merged or superseded this contract. It is disclosed by the record that on March 27th Mrs. Ware and husband executed a deed to a part of the land described in the complaint to the defendant, containing similar covenants and stipulations contained in the deed from the plaintiff and wife to the defendant. It will be observed, however, that the contract made March 27th by the right of way agent was made with the plaintiff and not with Mrs. Ware and her husband, and it is under this contract that the plaintiff seeks to recover damages in this action. The question, therefore, presented by the motion, and we think properly, is, Was this contract merged in the deed subsequently executed by the plaintiff and wife to the defendant?

The plaintiff, in his complaint, alleges that he is the owner and in the possession of the premises described, not only in the

deed from himself and wife to the defendant, but also the premises described in the deed from Mrs. Ware and husband to the defendant, and it seems to be undisputed in the evidence and in the briefs of counsel that the deed from Mrs. Ware and husband was made simply to convey the legal title to the premises which in fact was owned by and in the possession of the plaintiff, but to which they held the legal title. It is undisputed that the entire transaction for the purchase of the right of way through the tract of land to which the plaintiff held the legal title, and also the tracts of land to which Mrs. Ware and husband held the legal title for the benefit of the plaintiff, was made with the plaintiff and said Ware, and that the plaintiff received, not only the $583 specified in the deed from the plaintiff and wife to the defendant, but also the $1,115.10, money paid for the land owned by and in possession of the plaintiff, but the legal title to which was in Mrs. Ware, hence the fact that the legal title to a part of the premises was in Mrs. Ware is not material in this case.

It is disclosed by the evidence that the plaintiff was not only the owner and in possession of the premises described in the complaint, but also of a water right and ditches used by him for the purpose of irrigating his land; and that the construction of the road along the line adopted by the defendant necessarily greatly interfered with his ditches and water right, for the said road, as constructed, crossed plaintiff's old ditches at several different points.

The fact that the right of way agent's contract was entered into cotemporaneously with the conveyance by Mrs. Ware and husband to the defendant, and a few days prior to the execution of the deed by the plaintiff and wife to the defendant, clearly indicate that the execution of the contract and the conveyances of the right of way were intended to be separate and distinct contracts; and they seem to have been recognized as such by the defendant, as it constructed a new ditch for the plaintiff to replace the old one over part of the right of way, expending thereon some $1,600.

While it is a general rule that a deed executed in pursuance of a contract for the conveyance of real property, supersedes and merges all prior negotiations or contracts relating to the same, yet

there are well-considered exceptions to the rule, and this case, in our view, comes within the exceptions.

[3] It will be observed that, in this contract or agreement by the right of way agent, the plaintiff did not contract therein to convey the right of way, and therefore it was a collateral contract on the part of the defendant, relating to a matter not included in or referred to in the right of way deeds. Construing the contract and deeds of the right of way together, effect may be given to each. The deeds to the right of way convey to the defendant the land over which the road is to be constructed with the legal incidents connected therewith, and releases the defendant from all damages resulting from the construction of its said road to his other land, but by the right of way contract the defendant entered into an independent contract that in constructing its road it would so maintain plaintiff's water right and ditches "across said right of way as not to interfere (with) the proper irrigation" of plaintiff's other land, owned and occupied by him.

It will be noticed that in the conveyance and stipulations contained in the deed of Mrs. Ware and husband, and from plaintiff and wife to the defendant, the water right and ditches are not referred to directly or indirectly. It is true the plaintiff and wife released all claim for damages to their other lands, but not to their water right and ditches. As we understand the case, no claim is now made by the plaintiff for any damages resulting from any crossing, passageway or other privilege, over and across the said right of way, but he claims his damages by reason of the failure of the defendant to comply with the terms of the contract made by the right of way agent to "so maintain his ditches across said right of way as not to interfere (with) the proper irrigation of the property," and that the defendant has so interfered with said ditches as to cause the plaintiff loss by reason thereof. Had there been a formal contract between the plaintiff and the defendant, in which there had been some reservations made on the part of the plaintiff which was not included in the deed subsequently executed by the plaintiff, such contract would have been merged in the deed, and any reservations in the contract, not contained in the deed, would be deemed to be superseded and merged in the deed.

Numerous cases are cited by the appellant in which this doctrine is clearly enunciated, and that class of cases is well illustrated in the case of Clifton v. Jackson Iron Co., 74 Mich. 183, 41 N. W. 891, 16 Am. St. Rep. 621. In that case the defendant, who, it was alleged, was a trespasser by cutting timber on certain timber lands, based his right to cut and carry away the timber involved in the action by reason of a contract made by the defendant to sell the timber land of the appellant, but with a reservation therein contained reserving to itself the ownership of the timber suitable for certain purposes on said tract of land, and also the right to cut and remove any or all of said timber at its option at any time within 10 years from and after the date of said contract. Subsequently the defendant conveyed to the plaintiff the land in controversy by full warranty deed with no exception or reservation whatever, and the learned Supreme Court of Michigan, in its opinion, says: "Had no deed been made, it is agreed that the reservation would have prevailed. But a previous contract cannot contradict or control the operation of a deed. It was competent for defendant to relinquish any contract reservation, and a deed which grants and warrants without any reservation has that effect."

In Housekeeper Pub. Co. v. Swift, 97 Fed. 290, 38 C. C. A. 187, the learned Court of Appeals of this district, speaking by Mr. Justice Sanborn, qualifies this broad statement as follows: "A subsequent contract completely covering the same subject-matter, and made by the same parties, as an earlier agreement, but containing terms inconsistent with the former contract, so that the two cannot stand together, rescinds, supersedes, and is substituted for the earlier contract, and becomes the only agreement of the parties on the subject." It will be noticed in the opinion in this case it is said "a subsequent contract completely covering the same subject-matter, * * * but containing terms inconsistent with the former contract, so that the two cannot stand together, rescinds, supersedes, and is substituted for the earlier contract." As before stated the covenants and stipulations in the deed by the plaintiff to the defendant did not cover the same subject-matter as that contained in the agreement of the right of

way agent, and are not inconsistent with the stipulations in that agreement.

The case at bar, in our opinion, comes clearly within the decision of the learned Supreme Court of Illinois in the case of Shelby v. Chicago, etc., R. Co., 143 Ill. 385, 32 N. E. 438, in which the court, in a very elaborate and well-considered opinion, held that an independent agreement made by the defendant's testator, prior to the execution of the deed by him. to the plaintiff, was binding upon the heir, the defendant in the action, though subsequently to the agreement the testator did convey the premises to the plaintiff, omitting the stipulations and agreements entered into by him previous to the execution of the deed. It appears from an examination of the opinion, which is very lengthy, that the father of the defendant, in his lifetime, was the owner of an island in Kankakee river and a water power connected therewith; that he had erected dams at the upper end of the island and thereby created a body of water very desirable for boating purposes; that the plaintiff contracted with him to purchase a tract of land on the upper portion of the island for park purposes, the object of the plaintiff being to create a park and resort in order to enhance its business as a railroad company by attracting visitors thereto; that prior to the execution of the deed by the father of the defendant, upon being informed by the plaintiff that it would not purchase the property unless the dams would be kept up, it was assured by Mr. Cass, the grantor, that the dams should be maintained in their then condition and kept up during the summer season. Upon this assurance the plaintiff purchased the property, but no reference was made to the keepingup of the dams in the conveyance. The defendant in the action, who was the heir of the grantor, threatened to lower the dams in order that certain lands owned by her adjacent to the river might be drained. The action was instituted by the plaintiff to enjoin the defendant from so lowering or opening the dams, and the court held that the agreement made by the grantor, prior to the execution of the deed, was binding upon him and upon the defendant, and granted an injunction against any interference with the dams on the part of the defendant. The negotiations were

made through letters, Cass, the grantor, residing in New York
City. In reply to a letter written by Cass, the agent of the plain-
tiff in error wrote as follows: "I notice that the dam is so con-
structed that the water can be lowered five feet, and if that is
done, the north channel would be dry or nearly so, and no possi-
bility of boating. How can this be arranged? Is it your intention
to have the water lowered as indicated in the lease to the Eugene
Ice Company during the summer season? If this can be made
satisfactory, I shall be ready to accept the proposition for the sale
on the terms mentioned in your previous letter, and as specified
in my letter to you." To this, Cass replied saying: "The dams
were rebuilt so as to lower them in the spring of the year when
the streams north are full, so as to draw the water rapidly from
my lands which have been subject to overflow. During the sum-
mer I do not think that the water was ever more than one foot
below the comb of the dams. During excursion season there is no
objection to the water being kept to the comb of the dams; should
there be, as there sometimes is, very high water in June, it might
be necessary to lower the dam for a few days to carry off the
surplus water, but never so as to interfere with the free use of the
pool or millpond for boating purposes." The plaintiff's agent, in
reply to this, wrote: "Yours of the 16th inst. is at hand, and is
perfectly satisfactory." The plaintiff took possession of the prop-
erty purchased, made improvements thereon, and made an outlay
in a large sum of money for stock for its road to convey excur-
sionists from Chicago to the island. On the trial in the circuit
court, a judgment was rendered dismissing the action. On appeal
to appellate court, the decree was reversed, and on appeal to the.
Supreme Court the decision of the appellate court was affirmed.
In the opinion, the court says: "The principal ground of con-
tention on the part of Mary C. Shelby, the appellant in this court,
is, that all the negotiations antecedent to or cotemporaneous with
the execution of the deed conveying the easterly portion of the
island to the railroad company, were merged in that instrument,
and that said deed vested in the railroad company no right to
have the dams maintained, but, on the contrary, reserved to the

grantor and his heirs the right to control and remove the dams as they might see fit.

It is claimed by the appellee, on the other hand, first, that the letters forming the correspondence between Cass and the appellee's general manager were not a mere negotiation, but had ripened into a consummated contract, by which Cass, among other things, agreed to maintain the dams as they then existed, and not to allow the water therein to be drawn off so as to interfere with the use of the dams for boating purposes, and that the subsequent execution of the conveyance was but a partial execution of the contract, leaving the part in relation to the maintenance of the dams in full force, and not merged in the deed, and therefore still subject to specific execution by a decree of a court of equity."

In discussing the question the court says: "It cannot be doubted that, by the correspondence between Cass and the appellee's general manager, the minds of the parties met as to all the terms of the proposed purchase and sale of property, and that a binding executory contract, the consideration and provisions of which were all fixed and determined, was consummated. * * * Not only is this so, but the most important element in the negotiation, and the one which formed the main inducement to the railroad company to make the purchase, and without which the purchase manifestly would not have been made, viz., the right to have the dams maintained, and to the use of the pond and river for boating purposes, was agreed upon and secured to the railroad company by the contract. At the time the deed was executed, none of these matters rested in mere negotiation, but had received the assent of both parties, in such form as would doubtless have enabled either party to insist upon their specific performance. The materiality and importance to the railroad company of the right to have the dams maintained is manifest throughout the entire negotiation. The only purpose for which the company sought to purchase the island was to fit it up as a resort for excursionists in summer and to make it such a resort, the maintenance in the pond and river of such stage of water as would render boating practicable was absolutely indispensable. * * * The condition that the

dams should be maintained, which was insisted upon throughout by the railroad company, was fully and unqualifiedly acceded to by Cass, and when that was done, Cass' offer was accepted and the bargain struck. We are of the opinion that, if the right to have the dams maintained did not pass to the railroad company by the deed as an appurtenance, the stipulation in the contract providing for their maintenance was not and was not intended to be executed by the conveyance, and therefore was not merged in the deed. If it was not in the nature of an easement appurtenant to the land, it was a collateral right secured by the contract, and, not being covered by the deed, was not affected by it. * * * Manifestly, a deed merely conveying. from Cass to the railroad company the land comprising the upper part of the island would in no degree be inconsistent with the right on the part of the railroad company to have the dams maintained and to use the pond and river for boating purposes."

In Johnson et al. v. Oppenheim et al., 55 N. Y. 280, 293, the Court of Appeals of New York, in discussing the rule that "all prior and cotemporaneous negotiations were merged in the written agreement of the parties, and parol evidence could not be received of such negotiations to vary, contradict, or alter the terms of the written agreements," says: "The case is not within the rule which allows a collateral agreement, made prior to or cotemporaneous with a written agreement, but not inconsistent with or affecting its terms, to be given in evidence. Such was the case of Erskine v. Adrian, L. R., 8 Ch. App. 756, cited by the counsel for the appellants. The agreement by the steward of the landlord with the tenant, that the game on the demised premises should be reduced, was independent of and strictly collateral to the contract of letting. Morgan v. Griffith, L. R. 6, Evh. 70, was a similar case, and because the agreement to destroy the game was collateral to the lease, the tenant was enabled to maintain an action for a breach of it."

This court in the recent case of De Pue v. McIntosh, 26 S. D. 42, 127 N. W. 532, held that a parol cotemporaneous agreement which was the inducing cause of a written contract, or forming a

part of the consideration therefor, or upon the faith of which the written contract was executed, is admissible as constituting an exception to the general rule, citing a large number of authorities in support of the proposition.

The contract entered into by the right of way agent was clearly collateral to the main contract evidenced by the deeds and, as before stated, was not inconsistent with and did not vary the terms and stipulations of the deeds.

In view of the fact that the right of the plaintiff to have his water ditches and water rights remain unimpaired, and that the deed, or deeds, executed by plaintiff and wife and Mrs. Ware and husband, did not purport to cover the subject-matter of the water rights and ditches, and the contract entered into by the right of way. agent is in no manner inconsistent with the covenants and stipulations of the deeds, but is collateral thereto, we are clearly of the opinion that that contract remained in full force and effect, notwithstanding the execution of the deeds, and that the court was, therefore, clearly right in denying defendant's motion for the direction of a verdict, as there was evidence in the case tending to prove that the defendant had failed to comply with the terms of the contract. For such damages, therefore, as the plaintiff sustained by reason of the neglect of the defendant to comply with the terms of its contract, made by its right of way agent, he was entitled to recover such damages as the jury might reasonably find as the result of a noncompliance by the defendant with the contract.

The judgment of the circuit court is affirmed.

McCOY, J. (dissenting). I am unable to concur in the result of the foregoing opinion. It will be observed that the railway company, by virtue of its deeds from Taylor and Ware obtained an absolute fee-simple title, by purchase, to the lands on which it constructed its line of road across the Taylor farms; that by these purchases and deeds the railway company acquired more than a mere right of way easement over the lands in question; that the words "right of way" as mentioned and used in the contract "Exhibit C." was simply descriptive of the real estate

·conveyed by the deeds and not descriptive of the title conveyed, otherwise there would be a direct conflict between the contract and deeds, and which as we view the matter must be construed in the light that will harmonize rather than conflict the provisions thereof. While I agree with the proposition that the contract, "Exhibit C," is not merged into or superseded by the deed, but that the deed and contract are both binding component parts of an entire transaction which should be construed together; still, I am of the view, under the evidence in this case, that plaintiff has failed to show facts sufficient to warrant a recovery of damages against defendant for a breach of his contract. It will be observed from the evidence that a great part of the irrigation ditch, as originally situated on the Taylor land, prior to the purchase and construction of its road by the railway company, was on the land so purchased by the defendant for railway purposes, and that part of the ditch became the absolute property of defendant, and that this right of way and the railroad tracks cross and re-cross this ditch some eight times within one-half mile distance, and at some places the track and right of way pass obliquely over and across this ditch. It will also be observed that this contract, "Exhibit C," does not provide that defendant will maintain the said irrigation ditch in the original condition it was in immediately prior to the construction of the railway, but does provide that the company *will so maintain said ditch as not to interfere with proper irrigation of said lands;* in other words, the railroad company has not obligated itself, by the terms of this contract, to irrigate plaintiff's farm for him, but only to leave said ditch in such condition that plaintiff may properly irrigate his own land, if he so desires. The plaintiff has been permitted to recover on the theory that the construction of the railroad interfered with the irrigation of plaintiff's land from this ditch as it originally existed. This theory, I believe to be erroneous, as the company did not, by this contract, undertake to maintain this ditch in its original condition, but only undertook to maintain the ditch so that it would not interfere with the proper irrigation of the lands. There is no evidence in this case of any kind tending to show that the construction of the railway in any manner interfered with the proper

irrigation of the lands, if plaintiff had desired to so irrigate the same. There is no testimony that plaintiff ever attempted to irrigate the land after the construction of the railway. The evidence merely shows that after the construction of the railway the lands were not properly irrigated by means of the ditch as it originally existed, and by reason thereof plaintiff had less crop than before the construction of the railway. On the other hand, the testimony conclusively shows that defendant constructed a bridge across this ditch, at the head thereof, thereby leaving the water at the head of this ditch undisturbed on both sides of the railway track so that it might be used for the purposes of proper irrigation. Further than this defendant was not required to do under the provisions of this contract. For these reasons the judgment of the circuit court should be reversed.

SMITH, P. J., I concur in the foregoing opinion.