## S. M. Lloyd et al., Appellees, v. Frank Campbell, Appellant.

1. INTEREST, § 15*—*when allowable for amounts due under gas and oil lease.* Lessor in a gas and oil lease *held* entitled under section 2, ch. 74, R. S., J. & A. ¶ 6691, to recover interest from the time the several amounts payable under the lease respectively fell due, both the time of payment and the amount to be paid being stated in the lease.

2. CONTRACTS, § 253*—*effect of modification of gas and oil lease.* A modification of a written oil and gas lease construed as not in-

*See Illinois Notes Digest, Vols. XI to XV and Cumulative Quarterly, same topic and section number.

consistent with the original contract so as to relieve the lessee from drilling certain wells provided for by the original contract.

Appeal from the Circuit Court of Crawford county; the Hon. Enoch E. Newlin, Judge, presiding. Heard in this court at the October term, 1913. Affirmed. Opinion filed May 1, 1914.

Parker & Eagleton, for appellant.

Jones & Lowe, for appellees.

Mr. Justice Higbee delivered the opinion of the court.

This is a suit on an oil and gas contract entered into by appellees with appellant. There were three counts in the declaration filed by appellees, to all of which appellant demurred generally and specially. The demurrer was overruled by the court and appellant chose to abide by the same. It was agreed between the parties that no further claim should be made under the second and third counts of the declaration and that the case should proceed on the first count. An order of default was entered against appellant, and appellees having moved to dismiss the second and third counts of their declaration, the motion was allowed and the suit dismissed as to said counts. Appellant, however, appears to have entered into an agreement with appellees that the damages should be assessed by the court without a jury and thereupon said cause was heard on the first count of said amended declaration, the default entered against appellant and the evidence offered by appellees in support of said first count. Evidence was introduced under the first count by appellees, appellant being present either in person or by attorney, to cross-examine the witnesses. The court, after hearing the proofs, assessed appellees' damages at $366.74, and entered judgment against appellant for that amount.

The count of the declaration under which the damages were assessed sets out that on December 28, 1908,

appellees owned a certain two hundred acre farm in Crawford county, Illinois, and on that day entered into a written lease with appellant, which was set out in full. It recited the leasing of the land to appellant for mining and operating for oil and gas, the laying of gas-pipe lines and construction of tanks. The consideration of the rental was $1 a day to be paid by appellant, so long as the lease should be retained by him and one-sixth of the oil produced on and saved from the premises. It was further stipulated that a well should be completed on said premises on or before the first day of April, A. D. 1909, and that an additional well should be completed every sixty days thereafter, until fifteen wells should be completed; that in case of a failure to complete any of said wells at the time agreed upon, an additional rental of $1 a day for each of the wells not so completed should be paid, until they should have been respectively completed, and that all rentals should become due and payable on the last day of each calendar month. The agreement further provided that in addition to such rental there should be paid the sum of $100 for each location made for the purpose of drilling the well under the lease, said payment to be due when the location should be made. There were certain other conditions and agreements contained in the lease which do not concern this suit and are not necessary to be stated.

It was further averred in the declaration that afterwards, on August 24, 1909, the parties entered into a written modification of said lease, by which appellant agreed to drill a well on said premises to offset some well on the adjoining premises within forty days of the date of said modification and an additional offset well each thirty days thereafter, until all wells on adjoining lands necessary to be offset should be offset by wells on appellees' land, located not further than two hundred feet from the outside boundary line; that after the completion of all offset wells, appellant might at any time surrender the undrilled portion of

said lands, reserving, however, five acres in a square around each producing well; that if appellant should fail to pay rentals or location fees when due or to complete any well within the time required by the lease and the modification thereof, appellees might, at their election, declare a forfeiture and annul said lease as to the undrilled portion of said premises; that said modification of the lease also contained the further agreement: "The within agreement and lease except as the same is modified and changed by the above endorsement thereon, shall remain in full force and effect." The declaration further stated that five offset wells were drilled on or before January 31, 1910, and the drilling portion of said supplemental agreement was fully completed; that appellant thereupon should have proceeded to drill the remaining ten wells of said fifteen wells under the terms of the original lease and should have completed the sixth well April 1, 1910, the seventh well by May 31, 1910, and so on, completing one well each sixty days until all had been drilled; that said sixth well was not completed on or before the first day of April, 1910, as appellant had promised, but was completed on April 29, 1910, and that wells No. 13, 14 and 15, that should have been completed as above referred to, were never completed; that on November 4, 1911, appellant surrendered all the undrilled portion of said premises in accordance with the terms of the supplemental agreement.

It appeared from the proofs that five offset wells were all that were necessary to be drilled to comply with the supplemental agreement; that thereafter, appellant proceeded to drill the sixth well but did not complete it until April 29, 1910, as above stated; that he drilled wells No. 7 to 12 inclusive thereafter in compliance with the terms of the original contract and within the time therein named, but did not drill wells 13, 14 and 15; that he paid the location fees on all wells drilled as provided in the original contract.

At the conclusion of the hearing judgment was entered by the court against appellant for $366.74. This amount was evidently arrived at by allowing appellees $1 a day for the delinquency of twenty-eight days on the well due to be completed on April 1, 1910, and the same amount per day on wells 13, 14 and 15 from the time the same should have been completed to the date of the surrender of the lease, making $334; and also interest on said amounts from the date they respectively came due to the day of trial, May 17, 1913, amounting to $32.74, making a total of $366.74.

The principal controversy in this case is over the construction which should be given to the contract sued on. It is the contention of appellant that by the modification of the original contract above referred to, all drilling clauses in the original contract were abrogated and that thereafter, appellant, by the terms of the modified contract, was only required to drill the offset wells, which were shown to have been five in number; that such wells as appellant drilled in addition to the five required for offset were drilled at his option and pleasure and not under the contract.

Appellees on the contrary claim that the modification did not release appellant from his duty to drill the fifteen wells provided for by the original contract, but only provided that certain of them should be drilled as offset wells within certain times named and that they should be located not further than two hundred feet from the outside boundary line of the premises.

Appellant asserts the doctrine that when a new contract is inconsistent with an earlier one, so that they cannot subsist together, the latter takes the place of the former; that when the new contract is in regard to the same matter and has the same scope as the earlier contract and the terms of the two contracts are inconsistent, so that they cannot subsist together, the new contract as a general rule abrogates the earlier one and takes the place of so much thereof as is affected by the new contract. This position is undoubt-

edly correct. 3 Elliott on Contracts, sec. 1865; *Harrison v. Polar Star Lodge,* 116 Ill. 279. So also is appellant's further contention, that when a new contract upon the same subject-matter is entered into by the parties, this works a rescission or abandonment of the previous contract.

In this case, however, the modification referred to and relied upon by appellant, as abrogating the original contract, was not a new contract but simply an amendment or modification of the old one, and it expressly provided that the old contract, except as modified and changed by the amendment, should remain in full force and effect. The original contract and the modification must therefore be considered as one instrument and if possible must be so construed that all parts should stand together. Courts as a rule in construing contracts look to the entire instrument and give each part of it such effect, if possible, as will render the whole contract operative. *McCarty v. Howell,* 24 Ill. 341; *Hayes v. O'Brien,* 149 Ill. 403.

From a consideration of the contract and modification in question here, the two do not appear inconsistent and we find no reason why effect should not be given to both parts as is expressly provided for by the modification. In our view of the case the modification did not relieve appellant from drilling the fifteen wells provided for by his original contract, but the provision for the drilling of the necessary offset wells within a shorter time than the wells contemplated by the original contract were to be drilled was simply a precautionary measure agreed upon by the parties to protect these premises from the danger impending from wells drilled on adjoining premises. This also appears to have been the construction placed upon the contract by appellant himself, as he continued to drill wells after the completion of the five necessary offset wells without any new contract or undertaking on the part of appellees. When appellant commenced to drill the sixth well he must be held to have done so under

the contract, and his failure to complete the same within the time named subjected him to the payment of the penalties therein provided for. He could, had he so desired, have surrendered the lease, so far as it affected all the undrilled portions of said premises, before the time expired within which the thirteenth well was, by the lease, to have been completed and thus avoided any penalty for failure to drill the last three wells. He, however, chose to keep possession of the premises and not surrender them until a later date and he thereby incurred the penalty provided for failure to comply with the contract up to the time of the surrender thereof. The court below properly found that appellees were entitled to recover from appellant the penalties provided for by the contract, and an examination of the proofs shows that his assessment of the amount due was proper.

It is further contended by appellant that the court erred in requiring him to pay interest upon the several amounts after the expiration of the time provided for their payment. Section 2, ch. 74 of the Revised Statutes of this State (J. & A. ¶ 6691) provides that: "Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note or other instrument of writing." In passing upon this section of the statute, our Supreme Court in *Heissler v. Stose,* 131 Ill. 393, where the action was predicated on a lease which provided that the rent should become due and payable monthly in advance, stated: "The lease, in our opinion, was an instrument of writing, within the meaning of the statute, and after the rent became due, the plaintiff, by the express terms of the statute, was entitled to recover interest thereon."

In *Kelly v. Galbraith,* 186 Ill. 593, where a decree found that rent was due under the terms of a written lease and ordered payment thereof, it was held that there was no error in allowing interest upon overdue instalments of rent. In this case the lease or contract

was in writing and provided for fixed periods at which the payments named therein should be made. Both the time of payment and the amount to be paid were stated, and under the statute it is plain appellees were entitled to recover interest from the times the several amounts respectively fell due. The judgment of the court below will accordingly be affirmed.

*Affirmed.*