HANOVER CANAL COMPANY ET AL. v. WILSON.
(No. 753.)

WILSON v. HANOVER CANAL COMPANY ET AL.
(No. 764.)

Appeal and Error—Joint Assignment of Error—Water and Water Rights—Carey Arid Land Act—Contract to Furnish Water—Breach—Settlement by New Contract—Novation.

1. Two defendants in error having joined in their assignments of error, an assignment that the court erred in not holding that plaintiff was estopped as against one of said defendants cannot be considered, the other defendant not having pleaded or relied upon estoppel, and the assignment not being good as to both defendants.

2. A canal company, authorized to reclaim lands segregated under the Carey Arid Land Act and furnish water to settlers, entered into a written contract with a setttler for the sale of a water right to the latter providing for installment payments and that if the company failed to have its canal completed on or before a specified date to a point where the water could be diverted and applied to the irrigation of the land it would refund all money and interest paid by the settler, and three years later another contract was entered into relating to the same matter with different provisions. In an action by the settler for damages for failure to complete the canal as required by the first con-

tract he based his claim on an alleged collateral verbal agreement and representations by the officers of the company as to the time when the water would be ready for delivery. *Held*, (1) That the alleged collateral contract must be construed to give it any validity with the main contract, for, standing alone, it was without consideration, and was not broader than the terms of the main contract, but provided for furnishing the water at the time and in the amount stated in such main contract: (2) As the alleged verbal contract was based on no new or any consideration and required no additional or different obligations on the part of the company than those expressed in the main contract, it could not be upheld as a valid contract of the company, upon which to base a recovery of the damages claimed.

3. Assuming that the intention of the parties controls in the matter of whether or not, in the absence of fraud, mistake, or duress, a contract has superseded an earlier one, such intention when clearly shown by the second contract is controlling and does not rest in parol evidence.

4. Where there are two contracts of different dates between the same parties and relating to the same subject matter, and there is no equivocation or uncertainty as to the terms of either, the question of whether the second contract superseded the first is one for the court to decide and not for the jury.

5. A contract between a settler upon land segregated under the Carey Arid Land Act and a company engaged in constructing a ditch to reclaim and furnish water for such land provided for the sale of a water right sufficient for irrigating the land of the settler for $3,200, payable in installments, with interest, and a subsequent contract between the parties provided for the purchase by the settler of four shares in the company, each representing a proportionate interest therein sufficient to provide water for the irrigation of the settler's land for $2,806.50, payable in installments, with interest; said second contract containing provisions not contained in the first contract, creating a lien on the water for the purchase price, providing for foreclosure, and requiring the company to maintain and operate the canal until final settlement, and the settler to pay an annual assessment for maintenance charges, and other provisions releasing the company from any and all damages caused by unforeseen and unavoidable accidents

or any cause beyond the control of the company, and limiting the company's liability for an insufficient supply of water by reason of drought or other cause beyond the company's control. Upon the execution of the new contract the notes for the deferred payments under the first contract were returned to the settler. *Held,* that the provisions of the two contracts could not be reconciled, that each contract was entire in itself, completely covered the same subject matter, and provided for a different purchase price, and, therefore, the first contract was superseded by the second contract.

6. Said second contract and the settler's notes for the purchase price of the water right having been assigned by the canal company to a bank, as trustee, to which the company had executed a trust deed to secure a loan, and the settler having consented in writing to such assignment, and that all payments on the contract, until further notice, should be made to the assignee as such trustee, and agreed to make his payments accordingly, the bank was substituted instead of the company as the creditor, and the company ceased to be the owner or entitled to demand and receive payment of the assigned notes, at least until notice to the contrary.

7. The company and the settler each being in default under the first contract at the time of the execution of the second contract superseding the first, the company having failed to complete its canal so as to furnish the land of the settler with water for irrigation, and the settler having failed to make the stipulated payments as provided in the first contract, no action for damages could be maintained by the settler for the failure of the company to furnish water under the first contract, for such damages, if any, were unliquidated and had accrued at the time the second contract was executed, and are to be regarded as settled by the execution of the second contract and the surrender and cancellation of the notes given under the first contract.

8. The fact that the purpose of the second contract was to enable the settler to comply with the rules and regulations of the State Land Board in the matter of making his final proof to obtain title to his land, would not constitute a defense or permit him to avoid the obligations assumed in the later contract, or the effect of signing the same.

[Decided October 10, 1914].          (143 Pac. 345).

Error to the District Court, Big Horn County; Hon. Carroll H. Parmelee, Judge.

The material facts are stated in the opinion.

*Charles H. Harkins* and *Lonabaugh & Wenzell,* for the Hanover Canal Company and the State Bank of Chicago.

The rights and obligations of the parties became merged in the second contract, which superseded the first. As Wilson had been in default under the first contract, and had obtained an extension of time to make the deferred payments, there was ample consideration for his entering into the second contract and assuming the additional obligations thereof. Neither fraud, mistake nor undue influence was pleaded in the petition or proved at the trial and therefore the question of fraud does not rise in the case. By entering into the second contract the plaintiff waived any claim under the preceding contract, and neither party could thereafter maintain any action under it. (Housekeeping Pub. Co. v. Swift, 97 Fed. 290; Stow v. Russell, 36 Ill. 18; Chrisman v. Hodges, 75 Mo. 413; Reed v. McGrew, 5 Ohio, 375; Munford v. Wilson, 15 Mo. 540; Farrar v. Toliver, 88 Ill. 408; Bascom v. Cannon, 27 Atl. 968; Shepard v. Hamilton, 29 Barb. 156; Cocheco Bank v. Berry, 52 Me., 293; Caples v. Port Huron &c. Co., 131 S. W. 303; Welch v. Mischke, (Mo.) 136 S. W. 37).

By his written consent to the assignment of the contract to the bank Wilson became estopped as against the bank from claiming the damages sued for. (11 Ency. Law, 427-8). In passing on the sufficiency of a special verdict the court must treat material facts, established by the undisputed evidence, in the same manner and to the same extent as if they were formally incorporated into the verdict, or the court may incorporate them into the verdict by amendment. But such facts are a part of the verdict whether formally incorporated into it or not. (Murphy v. Weil, 61 N. W. 316). There seems to be no dispute between counsel as to this proposition. But counsel differ with reference to the

"undisputed facts" concerning the damages for the year 1906. The fatal objection to the contention that the court could have assessed damages for the year 1906 according to the undisputed evidence shows that Wilson was not entitled to any damages for that year.

*H. C. Brome, Thos. M. Hyde,* and *Chas. L. Brome,* for Edward B. Wilson.

The jury found that Wilson was entitled to damages for the year 1906, and there was ample and undisputed evidence to sustain that finding. The jury evidently became confused in answering the numerous interrogatories, and it was competent for the court to correct and amend the answer to the interrogatory as to 1906 so as to conform to the proof, and it was error to set aside the finding as to the damages for that year. (38 Cyc. 1931; Noakes v. Morey, 30 Ind. 103; Conover v. Knight, 91 Wis. 569, 65 N. W. 371; Mc-Fitridge v. Ins. Co., 90 Wis. 138, 62 N. W. 938; Fish v. Ry. Co., 38 N. W. 132; Pickett v. Richet, 2 Bibb, 178; Farwell v. Warren, 76 Wis. 527, 45 N. W. 217; Murphy v. Weil, 89 Wis. 146, 61 N. W. 316).

In the argument of counsel for the canal company and the bank that the first contract is conclusively presumed to have merged in the second counsel loses sight of the facts pleaded and proved by Wilson for a basis of recovery upon the first, second and third causes of action. It was pleaded and proved that prior to the crop season in each of the years 1905, 1906 and 1907, the managing officer of the canal company represented to Wilson that the canal would be completed and water delivered to his land for irrigation, and that relying upon said representations he prepared his land for crops; that by reason of the failure to so deliver the water as represented he suffered the damages alleged. The first three causes of action upon which only damages were allowed were not actions upon the contract of April 9, 1904, but upon representations made by the authorized officers of the canal company, and were collateral to the contract. The evidence offered to prove these representations and these

damages did not contradict the terms of the contract, nor attempt to vary its terms in any particular. Its effect, however, is to show that the collateral obligations were not a part of the negotiation in entering into the second contract. When damages have accrued through breach of a verbal contract, and there is no waiver or disclaimer of the breach in a subsequent writing, an action will lie on the verbal agreement notwithstanding such writing. (Luckey v. R. R. Co., 133 Mo. App. 589, 113 S. W. 703; Lawson on Contracts, Secs. 428, 429).

Merger is an operation of law which extinguishes a right by reason of its coinciding with another right of a greater legal worth in the same person. The doctrine of merger applies by mere operation of law independent of any intention of the parties, and without any express or implied agreement that the inferior remedy shall be extinguished. The requisites of a merger are that the two securities must be different in their legal operation, the one of higher efficacy than the other, and the two securities must be co-extensive, that is, the new and superior security must be for the same debt and between the same parties. (Ry. Co. v. Craycraft, 39 N. E. 523).

The elements of estoppel are not presented in this case. In order to constitute an estoppel, the representation must have been made with the intention that the other party should act thereon, and the other party must have been induced so to act. (Booth v. Lenox, 45 Fla. 191, 34 So. 556; Welty v. Vulgamore, 24 O. C. C. 572; Bruner v. Campbell, 90 Ill. 632; Rogers v. Ry. Co., 100 Me. 86, 60 Atl. 713, 70 L. R. A. 574; Inhabitants v. Inhabitants, 4 Mass. 180). In order to create an estoppel in *pais,* the party pleading it must have been misled to his injury in some substantial particular. (Appeal of Columbus &c. R. Co., 109 Fed. 177; Heinbucher v. Goff, 119 Ill. App. 373; Dudley v. Pigg, 149 Ind. 363, 48 N. E. 642; Meisel v. Wells, 107 Mich. 453, 65 N. W. 289; Gjerstadengen v. Hartzell, 9 N. D. 268, 83 N. W. 230, 81 Am. St. 575; McLemore v. R. R. Co., 111 Tenn. 639, 69 S. W. 338; Mining Co. v. Juab Co., 22 Utah, 395,

62 Pac. 1024; Baltimore Dental Ass'n. v. Fuller, 101 Va. 627, 44 S. E. 771; Ashworth v. Trammell, 102 Va. 852, 47 S. E. 1011). The evidence shows conclusively that the trustee certified the bonds secured by the Wilson contracts upon the receipt of the first contract early in 1907, and thus did not rely upon the endorsement and acknowledgment of the contract of October, 1907. The second contract was substituted entirely at the instance of Wilson and the canal company, and the trustee was not in any manner prejudiced by that substitution.

SCOTT, CHIEF JUSTICE.

Both of these proceedings arise out of the same facts and upon the same record of the trial in the court below of the case of Edward B. Wilson, plaintiff, and the Hanover Canal Company and the State Bank of Chicago, as defendants. The action was instituted by Wilson to recover damages for the alleged failure of the canal company to complete its canal and furnish water to irrigate his land within the time agreed and stipulated by the company in its contract with him. The case was tried to a jury which returned answers to 20 interrogatories which were submitted to them. The court rendered judgment in favor of the plaintiff and against the defendants upon the special findings. Both plaintiff and each defendant made separate motions for a new trial which motions were severally overruled and the defendants and plaintiff each bring error. By stipulation the cases are consolidated and submitted on the same record.

It is admitted by the pleadings that the Hanover Canal Company is and was a corporation created, organized and existing under and by virtue of the laws of Wyoming and engaged in constructing an irrigating ditch known as the Hanover Canal taking its water by permit duly obtained from the State Engineer from the Big Horn River for the purpose of reclaiming lands lying under said ditch and being duly authorized under the law so to do and for the sale and delivery of the water so diverted by means of such

canal free from all incumbrances together with all rights and franchises attached thereto to settlers occupying the land described in said permit, which permit included the northeast quarter of Section 31, Township 47 North, of Range 92 West in Big Horn County in the State of Wyoming and which was selected by plaintiff for the purpose of obtaining title to the same under the Carey Arid Land Act and which land had been theretofore segregated from the public domain and a water right for the same through and by means of said canal having been theretofore secured from the State Engineer, the plaintiff on April 9, 1904, entered into a written agreement with the Hanover Canal Company to purchase a water right for said land and to pay therefor the sum of three thousand and two hundred ($3,200) dollars as follows: $100 cash, $1100 on July 1, 1904; $400 on April 9, 1905; $400 on April 9, 1906; $400 on April 9, 1907; $400 on April 9, 1908; $400 on April 9, 1909; with eight per cent. interest on said deferred payments according to the tenor of six notes of even date therewith. The canal company agreed in and by the contract in consideration of the money paid and notes executed and delivered that if it failed to have the canal completed to a point where the water could be diverted and applied to the irrigation of said land on or before June 1, 1905, to refund to plaintiff all money and interest paid prior thereto on the contract. It is further alleged that this contract was not in conformity with the contract required by the State Board of Land Commissioners and which fact was not discovered until October 4, 1907, on which day a contract as prescribed by said board was entered into by Wilson with the canal company to purchase four shares in the canal company, that being as recited in the contract sufficient to irrigate the one hundred and sixty acres of the plaintiff and the performance of other stipulations and agreements as to the maintenance of the canal all at the agreed purchase price of two thousand, eight hundred and six and 14/100 dollars with interest on the principal as follows:

|  | Principal | Amount with Interest |
|---|---|---|
| September 29, 1908 | $561.30 | $785.68 |
| September 29, 1909 | 561.30 | 740.78 |
| September 29, 1910 | 561.30 | 695.88 |
| September 29, 1911 | 561.30 | 650.98 |
| September 29, 1912 | 561.30 | 605.08 |

With the knowledge and written consent of plaintiff the last contract and the notes secured thereby were assigned to the State Bank of Chicago, as trustee.

Plaintiff in his amended petition, which was filed on February 6, 1911, alleges for a first cause of action that prior to the crop season of 1905 and upon the assurance and representation of the Hanover Canal Company that it would have the canal completed by June 1st of that year so as to furnish water for the irrigation of his land, entered thereon and prepared the same and constructed laterals for the purpose of such irrigation, planted 50 trees and a quantity of shrubbery upon the same and that the company failed during that year to complete said canal so that he was unable to obtain water and for want of which the said trees and shrubbery died to his damage in the sum of $1,000, no part of which has been paid by the said canal company.

The second cause of action was for the alleged failure to complete the canal and furnish plaintiff with any water during the year 1906 to irrigate his land, although he prepared his land for crops that year upon the representation of the canal company that it would complete the canal so as to furnish him water during the crop season of that year, whereby plaintiff suffered damage in the sum of $2,000, no part of which has been paid.

The third cause of action is similar to the second and is predicated upon the alleged representations and assurance of the canal company that it would complete the canal in time and plaintiff alleges that he suffered damages for the failure of the canal company to furnish sufficient water to irrigate his land for the year 1907, which resulted in a par-

tial failure of his crop to his damage in the sum of $3,000, no part of which has been paid.

The three foregoing causes of action are predicated on the alleged breach of the first contract hereinbefore set forth to furnish him water to irrigate his land and crops in each of the years 1905, 1906 and 1907.

The fourth cause of action is predicated upon the alleged breach of the contract dated October 4, 1907, for the alleged failure of the canal company to maintain its canal in good repair, which resulted in a loss of water for irrigation purposes so that he was unable to raise any crop for the year 1908, to his damage in the sum of $3,500.

The fifth cause of action consists of similar allegations as the preceding upon an alleged failure of the canal company to keep its canal in repair and for a shortage of crop in 1909 resulting therefrom to plaintiff's damage in the sum of twelve hundred dollars.

In the sixth cause of action plaintiff predicates his right to recovery for an alleged failure of the canal company to keep the canal in repair so as to furnish sufficient water to irrigate certain described land lying under the canal and which he held under lease for the year 1910, according to the terms of a certain contract by the canal company with the owner, by which contract the company agreed to furnish water to irrigate said land and crops thereon, to plaintiff's damage in the sum of $1,300. Plaintiff further alleges that the State Bank of Chicago was a corporation and acting as trustee and that its interests were subordinate to those of the canal company. The plaintiff further alleges that he has made no payments on the contract of October 4, 1907, for the reason that the damage sustained by him under the foregoing causes of action were more than sufficient to cover any and all payments stipulated to be paid by him. He prays judgment against the Hanover Canal Company upon the six causes of action for the sum of twelve thousand, five hundred dollars, with interest and costs of suit and that the court ascertain the amount due upon the contract of Octo-

ber 4, 1907, and that the amount of the damage found in his favor may be applied as a credit thereon.

The canal company filed its separate answer and as a first defense denied everything alleged in the amended petition except as specifically denied or admitted to be true; admitted that the contracts of April 9, 1904, and October 4, 1907, were duly executed and alleged that the latter and notes secured thereby were with the knowledge and consent in writing of plaintiff duly assigned by said canal company to the State Bank of Chicago as trustee under the provisions of a trust deed dated January 1, 1907.

As a second defense the canal company alleged that by the contract of October 4, 1907, all matters of difference were settled between it and plaintiff for and upon consideration of the extension of the time of payment and that the first contract was merged in the second.

As a third defense to the fourth, fifth and sixth causes of action the canal company alleges that it fully complied with all the terms and conditions of the contract upon its part to be performed and duly and seasonably constructed and in workmanlike manner completed its canal which was accepted by the State Engineer and duly delivered water to the users thereof under said canal entitled thereto, including plaintiff, and fully complied with its contract with the State of Wyoming and that if any damage or loss was suffered by plaintiff in the years 1908 and 1910, or either of them, as claimed by him, such loss was not due to or caused by any negligence or failure of the canal company to fulfill or violation of its contract but owing to a drought in the vicinity of said land and a scarcity of water in the Big Horn river, that being the source of supply for said canal, and that it was for that reason impossible to fill plaintiff's ditch and carry water to his land, and in addition thereto there were several unusual floods and cloud bursts during said years which destroyed and washed away a part of said canal and destroyed its flumes and all of which were accidents beyond the control of the canal company; also that without any known cause the sides of the canal broke and slid down into the

canal on several occasions so that thereby the conducting of water through the said canal was temporarily rendered impossible, and that immediately on the happening of said accidents the company promptly and in due season repaired the same and again delivered water as provided by its contract. To the separate answer of the canal company the plaintiff replied denying each and every allegation of new matter contained therein.

The State Bank of Chicago, answering separately, for a first defense denied each and every allegation contained in the petition except as specifically denied or admitted. Admitted that it is and was a corporation as alleged and that the contract of October 4, 1907, was executed and mortgaged by trust deed to it and that plaintiff agreed in writing to such assignment and to make all payments as provided in such contract to said bank, aggregating the sum of $2,806.14. It is alleged as a second and further defense to the first three causes of action that the bank on January 1, 1907, as trustee, agreed to loan the canal company $250,000, to be represented by coupon bonds of the canal company which were to be duly certified by the bank and sold to the public generally and the proceeds paid to the canal company from time to time; thereupon the canal company duly made and executed its trust deed to the bank of all its water rights and other property in Big Horn County, including the Hanover Canal. It was provided in and by said trust deed that no bond should be considered as issued until authenticated by the signature of the trustee therein named and that before any of said bonds should be certified the canal company should assign to and deposit with the trustee as additional security for the payment of said bonds and interest thereon purchase money contracts for, or purchase money mortgages upon water rights sold by said canal company to the owners or claimants of the lands to be irrigated by said company's present or future water system together with a lien upon such lands, aggregating the par value of one and one-half times the par value of the bonds so certified and issued. It was further provided that in case notes

were taken from the owners of the land to evidence the
deferred payments so secured then such notes should be
assigned and deposited with the trustee as a part of such
additional security. It was further provided that "After
such bonds have been executed by the officers of the com-
pany they shall be delivered to the trustee, which shall cer-
tify and issue to the treasurer of the company, or to such
person as he may in writing designate, any or all of such
bonds when and as soon as collateral security for such bonds·
so to be certified and issued has been deposited with the
trustee." It is alleged that the plaintiff with full knowledge
of the terms and conditions of said trust deed entered into
the contract of October 4, 1907, to and with the canal com-
pany and agreed in writing to pay said trustee the full ·sum
of $2,806.50 and all interest thereon according to the terms
and conditions of the contract. That afterwards plaintiff's
contract with the Hanover Canal Company was duly assign-
ed by the company to the bank as such trustee and that the
latter relying upon said agreement and the promises of the
plaintiff to pay to this defendant the said sum and interest
thereon and in consideration thereof duly certified the nego-
tiable coupon bonds of the company to an amount equal to
$2,806.14, and all interest thereon and said coupon bonds so
certified as aforesaid were thereafter duly sold to innocent
persons for value, for whom the bank was acting as trustee
and the proceeds from such sales were duly paid to the
canal company. It is further alleged that the bank had no
notice or knowledge of the first contract or any claim of
plaintiff or set-off or damages arising out of the alleged
non-fulfillment of said contract by the canal company and
pleads estoppel as against any right of recovery from it on
the first three causes of action growing out of the first con-
tract.

As a third defense it is alleged that plaintiff has made de-
fault in the provisions of his contract in failing and refus-
ing to pay accrued interest or any interest on the purchase
price as provided in his contract of October 4, 1907, $112.26
of which interest became due April 4, 1908.

As a fourth defense to the sixth cause of action this defendant pleads a general denial.

As a fifth and separate defense the bank alleges that separate causes of action against separate defendants are improperly joined in the petition in that this defendant is not a party to, or in any wise interested in any of the matters and things alleged in the first, second, third and sixth causes of action contained in the amended petition and is not a proper party to said causes of action.

The plaintiff filed his separate reply to the separate answer of the bank in which he denies each and every allegation in said answer contained except so much thereof as admits the averments ot plaintiff's amended petition to be true, and admits the execution and delivery of a paper called a trust deed or mortgage and avers that he is not advised as to the terms and conditions of said instrument or the consideration therefor and especially denies that said bank ever did or could obtain any interest in or right to moneys payable or to become payable from plaintiff to the canal company under and by virtue of the contracts respecting which this action is brought by plaintiff other than the right to receive on account thereof any moneys that might be due and owing from this plaintiff to said canal company after said canal company had fully discharged its obligations to the plaintiff under and pursuant to the terms of said contracts and in that behalf avers and charges the fact to be that whatever interest said bank acquired in the premises was and is subordinate and subject to the right of plaintiff as against the canal company.

The plaintiff also filed his separate reply to the separate answer of the canal company in which he denied all new matter alleged therein.

The case was tried to a jury to which twenty interrogatories were submitted and upon the answers returned the court rendered judgment jointly against the canal company and the bank for $714, that being the aggregate of the damages found by the jury on the first and third causes of action, and directed that no execution issue thereon but de-

creed that said amount be a credit and set-off against the defendants, Hanover Canal Company and the State Bank of Chicago, and against the amount due upon the notes referred to in the contract entered into between the plaintiff, Edward B. Wilson, and the Canal Company on the 4th day of October, 1907. Each of the parties, including the plaintiff, made separate motions for a new trial, the plaintiff complaining of the action of the court in refusing to amend the answer to Interrogatory No. 4 in accordance with, as it is alleged, the undisputed evidence and in sustaining the canal company's motion to set aside the answer which purported to allow plaintiff damages in the sum of $286 for the year 1906, under plaintiff's second cause of action. The motions for new trial were severally overruled and the parties bring the case here on error.

It will be observed that the jury in answer to the interrogatories found no damages in favor of the plaintiff for the years 1908 and 1910 or after the execution of the contract of October 4, 1907, under plaintiff's fourth, fifth and sixth causes of action and for that reason, and there being no complaint here urged as to such findings, they need not be further referred to. The finding of damages in plaintiff's favor for the year 1906 for the sum of $286 was on motion of the defendants, as above stated, over objection of the plaintiff, vacated by the court.

The defendants join in their assignments of error here and present two questions for consideration, viz: First, it is claimed that the court erred in not holding that the contract of October 4, 1907, by and between plaintiff and the canal company, superseded the contract of April 9, 1904, and released all claims for damages for breach thereof, and second, that plaintiff was estopped from recovering any damage from the bank based upon the failure of the canal company to fulfill and perform the conditions to be performed by it under the terms of such contract.

We need not here consider the question of estoppel as pleaded by the bank and the evidence in support thereof for the reason that the canal company did not plead or rely

upon estoppel and both it and the bank are here on joint error in so far as that question is concerned. Such assignment of error is not good as to both and that being so the assignment falls under the holding of this court in Greenawalt v. Natrona Inprovement Company, 16 Wyo. 216, 230, 92 Pac. 1008. We think, however, that both defendants have tendered the issue in their separate answers that the later contract superseded and released any and all liability including damages for breach of the former. Each defendant separately requested the court to instruct the jury to the effect that the contract between the plaintiff and the Hanover Canal Company, dated April 9, 1904, sued upon, together with the notes made and delivered by the plaintiff in pursuance of said contract were merged in the subsequent contract between the same parties, dated October 4, 1907, and that for that reason all rights of both parties have ceased and terminated under the first contract and that no recovery can be had by either party for and on account of said first named contract and notes, and directing the jury to disregard all claims for damages under the plaintiff's first, second and third causes of action covering the years 1905, 1906 and 1907 for damages alleged to have accrued under the first contract. The court refused to so instruct, and over objection and exception instructed the jury that they were authorized under the pleadings and evidence to allow damages under the first, second and third causes of action. Each defendant also moved the court for judgment notwithstanding the verdict, which motions were overruled, to which exceptions were severally reserved and such ruling is also assigned as error. The above assignments may be considered together. We shall first refer to plaintiff's theory of his right to recover as stated in his brief, before comparing the terms and conditions of the two contracts and stating the essential rules of construction applicable in determining whether the latter operated to supersede the former.

The defendant in error says in his brief: "The first three causes of action, being the only causes upon which

damages were allowed, were not actions upon the contract of April 9, 1904, but upon representations made by the authorized officers of the plaintiff in error, and were collateral to said contract." We do not understand how this contention can be sustained for it is expressly provided in the contract of April 9, 1904, that if "Said party of the first part * * * * * * fails to have * * * * * canal completed to a point where the water may be diverted to irrigate the land * * * * on or before the first day of June, A. D. 1905, the said party of the first part hereby agrees to refund to the said party of the second part all money and interest paid by said party of the second part unto the said party of the first part." Whatever damage the plaintiff may have sustained by reason of the failure of the defendant to have the canal so far completed as to be able to furnish the plaintiff water to irrigate his land by the first day of June, 1905, was stipulated and liquidated by the written contract, and it must be presumed that the officers of the company were speaking with reference to the company's contract with Wilson and no other. It is alleged that the representations were made by the canal company by its managing officers, to-wit: its President, Secretary and General Manager, and all the representations were made as to the time of completing the company's canal so as to furnish Wilson with water to irrigate his land. It matters little which view is taken, that is to say whether the damage found by the jury and for which the court rendered judgment, accrued upon the contract of 1904 or upon a contract collateral thereto. The damage allowed was for the failure of the company to furnish water to Wilson for irrigation purposes at the time alleged. The alleged collateral contract must be construed to give it any validity with the main contract, for standing alone it is without consideration. In other words we have to look to the main contract to ascertain the consideration for furnishing any water. The alleged collateral contract was not broader than the terms of the main contract, for by the terms of the latter the water was to be furnished in the amount and at the times

stated in the former. We are of the opinion that the alleged verbal contract with the officers of the company was based on no new or any consideration or required additional or different obligations on the part of the company than those expressed in the main contract, and for that reason it cannot be upheld as a valid collateral contract of the company. The officers are not sued in their individual capacity but the claim is treated as a company liability alone.

The contracts of April 9, 1904, and October 4, 1907, were between the same parties and each had to do with the same subject matter, viz: the purchase of a water right from the company to irrigate the same tract of land. In the first contract it was described as a water right to furnish water sufficient for that purpose as provided by the laws of Wyoming while the second contract is for the purchase of four shares of the canal company "each share representing a proportionate interest therein and to represent a sufficient carrying capacity to provide water for the complete irrigation and reclamation of 160 acres of land subject to conditions therein stated." The consideration as expressed in the first contract was $3,200, while that in the second was $2,806.14, payable as hereinbefore stated. Interest on the deferred payments under the first contract was to be at the rate of 8% per annum, while under the second contract it was stipulated to be at the same rate, until due, and 10% per annum after due. No lien was created upon the water for the purchase price in the first contract, but was so provided and foreclosure thereof under the statute was also provided in the second contract in case of default in payment of such purchase price. The second contract provided that the company should maintain and operate the canal until the final settlement and that Wilson should pay an annual assessment for maintenance charges of forty cents an acre. The last provisions were not contained in the first contract nor was the further provision which is contained in the second contract to the effect that the company should be released from any and all damages caused by any unforeseen or unavoidable accidents or any cause beyond the con-

trol of the company, and also providing for a limited liability by reason of an insufficient supply of water by reason of drouth or other cause beyond the canal company's control. It is apparent that the provisions of the two contracts cannot be reconciled. Each contract is entire in itself, completely covers the same subject matter and the purchase price is different. The rule in such a case is stated in Housekeeper Pub. Co. v. Swift et al., 97 Fed. 290, 38 C. C. A. 187 (U. S. Cir. Ct. of App., 8th Cir.), where the court had before it two contracts of a different date made by the same parties and each completely covered the same subject matter. In that case the contracts were respectively referred to as of July 22 and June 14. Judge Sanborn in delivering the opinion for the U. S. Circuit Court of Appeals, said:

"We have then two contracts between the same parties for the sale of the same property—The earlier for the sale for $25,000 in cash and $25,000 in notes, and the latter for $25,000 in cash without any notes. What was the legal effect of the subsequent contract upon its predecessor? In the absence of fraud or mutual mistake—and the plaintiff shows no allegations sufficient to sustain a charge of either —there can be no doubt concerning the answer which ought to be given to this question, under the law. The later contract covers the entire subject matter of the earlier one. It is complete in itself. It is inconsistent with the preceding contract. The two cannot stand together. There was but one sale of this property and this sale could not have been for $50,000 and for $25,000 at the same time. A subsequent contract completely covering the same subject matter, and made by the same parties, as an earlier agreement, but containing terms inconsistent with the former contract, so that the two cannot stand together, rescinds, supersedes and is substituted for the earlier contract, and becomes the only agreement of the parties on the subject. The legal effect of the contract of July 22, therefore, standing by itself, was to rescind the agreement of June 14, and to con-

stitute itself the only contract between the parties for the sale of the property."

In Stow v. Russell, 36 Ill. 18, the question arose as to how far, if at all, a later contract covering the same subject matter superseded an earlier contract by the same parties. The court say:

"The plaintiff insists that the contract of August 2, 1852, was not a new contract but merely an extension of the contract of 1846. It may not be very material which it is. We are inclined to think, however, from the circumstances attending the transaction and from the transaction itself, the old contract was thrown aside and the new one made on a different basis. The first contract had been unperformed and contained, as we infer, no clause making time of the essence of the contract nor did it provide for forfeiture on default. The price to be paid for the lot was greater under the new than under the old contract. It has, too, the most stringent stipulations, and it does not contain the slightest allusion or reference to any prior contract. There is not the least intimation in it that it was designed as a revival or as an extension of the contract of 1846 for any purpose or for any new consideration. In all these aspects and features, it seems to be an entirely new contract for a larger amount with the stipulations that the covenants to be performed by the plaintiff are expressly made a condition precedent to any performance by Russell and time is made of the essence of the contract. If it had been intended to revive and extend the old contract, it is natural to suppose some reference to it or some intimation to that effect would be found in the contract actually made. None is found in it, and it seems quite easy to account for the stringent terms embraced in the August contract. The first contract containing no strong features had not been complied with. The plaintiff was in arrears nearly three years, and as he states in his appeal he had become embarrassed 'through making large improvements upon the property belonging to himself on the opposite corner of the lot in question', thus misapplying means which should have been punctiliously devoted to the dis-

charge of this contract. He had the means to meet the contract, that is certain, if he had honestly applied them. This neglect to pay and this diversion of his means to other objects was a warning to Russell, that if he made another contract with the plaintiff, to avoid embarrassment himself and to insure performance, he must introduce into the contract the most stringent provisions; hence the clause making payment a condition precedent and time of the essence of the contract. This contract of August 2 is the last act of the parties and must be held to contain and express their true meaning and intentions. The old contract has nothing to do with it but is wholly extinct. The contract is evidenced by this instrument and by it alone."

It was said in Chrisman v. Hodges, 75 Mo. 413:

"A contract in writing which is complete and perfect in itself and not ambiguous in its terms will be held to supersede a prior written contract in relation to the same subject matter and parol evidence will not be admitted to show that such was not the intention of the parties." Professor Page in his work on Contracts, says at §1340: "If the later contract between the parties covers the same subject matter and has the same scope as the earlier contract, but is in whole or in part inconsistent therewith, the later contract abrogates the earlier contract *in toto,* and is the only contract upon the subject between the parties." It is said in 9 Cyc. at page 595, that "One written contract complete in itself will be conclusively presumed to supersede another one made prior thereto in relation to the same subject matter. If agreements be made between the same parties concerning the same matter and the terms of the latter are inconsistent with those of the former so that they cannot subsist together, the latter will be construed to discharge the former."

The evidence is undisputed that after the trust deed was executed by the canal company to the bank and the assignment of the contract of October 4, 1907, and notes secured thereby to the bank, the notes given by Wilson on the contract of April 9, 1904, being for a different amount, were cancelled and returned to Wilson. There is no doubt that

the last contract is supported by a consideration and the assignment to the bank and the assent thereto indorsed thereon in writing and acknowledged on October 11, 1907, by the plaintiff, in effect acknowledges and substitutes the bank as a creditor for all money due or which may become due on that contract prior to any notice to the contrary. That indorsement is as follows, viz:

"I hereby acknowledge that I have been duly notified that the foregoing contract has been or will be assigned to State Bank of Chicago as trustee in the mortgage or trust deed, dated January 1, 1907, given to said trustee by the Hanover Canal Company and that all payments on this contract must until further notice be made to said assignee of this contract as such trustee, and I hereby consent to such assignment and agree to make my payments accordingly."

Assuming that the question of intention of the parties controls in the matter of whether or not in the absence of fraud, mistake or duress, the last contract has superseded an earlier contract, such intention if clearly shown by the second contract is controlling and does not rest in parol evidence. It is unnecessary to further refer to the text books or other cases in detail upon this subject. The rules announced are supported by the great weight of authority and are applicable to the case here where each contract is complete in itself and there is no equivocation or uncertainty as to the terms of either, and that being so the question of whether the second contract superseded the first was one for the court to decide and not for the jury. (9 Cyc. 772, 773; 29 Cyc., page 1140.)

No privity of contract between Wilson and the bank other than by the assignment of the contract and notes by the canal company to the bank under the trust agreement which was assented to in the writing above set out and signed by him is here shown. This, we think, constituted a substitution of the bank as the creditor instead of the canal company, which was the creditor up to the time of the assignment of the notes to the bank, and which ceased to be the owner or entitled to demand and receive payment of the

notes so assigned, at least until notice to the contrary and no such notice is here shown.  The parties upon the facts must be held to have elected to measure their rights and liabilities for defaults occurring thereafter by the contract of October 4, 1907, and the question further presents itself as to what, if any effect, the later contract had upon the plaintiff's right to recover damages for the canal company's default under the first contract.  It is conceded that at the time of the execution of the second contract both Wilson and the canal company were in default on the first contract. The damages here sought by Wilson were unliquidated and so known to him at the time.  No fraud, mistake or undue influence is pleaded or relied on by Wilson, nor is the first contract or any claim for damages or rights thereunder referred to in any way in the second or later contract, nor in so far as this record shows did he attempt to recover any damages alleged to have occurred under the first contract until he commenced this action nearly four years after the execution of the second contract.  It is true that Wilson claims that the sole and only purpose of the second contract was to enable him to comply with the rules and regulations of the State Land Board in the matter of making his final proof before that board to obtain title to the land. That does not constitute a defense or enable him to avoid the obligations assumed by him in the later contract, or the effect of signing the same.  (International Contracting Co. v. Lamont, 155 U. S. 303, 310; 15 Sup. Ct. 99, 39 L. Ed. 160; McCabe Const. Co. v. Utah Const. Co., (D. C.) 199 Fed. 976).  The second contract does not on its face purport to be an extension of the old but does cover the same subject matter, is complete in itself, and the purchase price is less.

Upon the facts Perkins v. Frazer et al., 107 La. 390, 31 So. 773, is quite in point.  That was an action to recover water rents under two contracts.  We quote from the opinion as follows:  "In March, 1898, Nason, of the defendant firm, and Perkins, the plaintiff, made an agreement for the prolongation of Nason's irrigation canal easterly along the

north boundary of Perkins' land. In March, 1899, the defendant firm, to which had passed all the rights and obligations of Nason under the said agreement, and the plaintiff made an agreement for the prolongation of the same canal southerly along the east boundary of the same land. The agreements contained reciprocal obligations: on the one part to construct the canal, and furnish water from year to year; on the other part to cultivate a specified number of acres in rice, and pay water rent from year to year. Plaintiff now sues to set aside these contracts on the ground of non-performance, and to recover damages; and defendant, in reconvention, claims the water rent for 1898 and 1899." The court further say: "When the contract of 1899 was entered into, plaintiff was denying that he owed these rents of 1898. He was claiming that the debt had been more than offset by the losses to the crop of 1898 resulting from the inadequacy of the water service. We have stated above that he had some ground for complaint and that defendants had some need of indulgence. The contract of 1899 was to a great extent a readjustment of the contractual situation of the parties. Among other important changes it converted the original three years term into perpetuity; and the original obligation to deliver the water on the land into the obligation to deliver the water on the highest point on the land. To our mind it is clear that this contract liquidated the situation between the parties and made a fresh start. Thereafter, so far as the record shows, defendant made no further mention of this claim for rent, not even in the letter of the 24th of May, where they were making demand for the rents, and presumably for all the rents due. True the claim is not mentioned in the instrument evidencing the contract, but it was a matter at issue between the parties, and it is so improbable that the parties should have left this issue unsettled, dealing as they were with virtually the same subject matter, that we must assume that they considered it as settled by the contract. The debt, as it were, entered into the contract as a part of the consideration thereof. The modes of extinguishing obligations,

enumerated in Article 2130 C. C., are not exclusive. (Bank v. Cage, 40 Ann. 138, (3 South. 721). This particular obligation became extinguished in a mode peculiar to itself."

We may with equal propriety say upon the facts here that it does not seem reasonable to assume that the damages for breach of the first contract were not considered when no rights were expressly reserved in respect to them but on the contrary upon this record we may justly assume that the parties considered them settled as a part of the consideration for the second contract, especially as plaintiff was also in default for payments on the earlier contract. The later contract was a re-adjustment of the contractual relations between Wilson and the canal company and we assume that upon this record it also settled all claims for damages which had accrued for the default of either party under the former. We are of the opinion that the court erred in refusing to give the instructions requested as to the first three causes of action and also in refusing to grant defendant's motion for judgment *non obstante veredicto*.

The cross-error assigned by the plaintiff based upon the court's ruling in sustaining defendant's motion to set aside the special finding of the jury to the effect that plaintiff had sustained damages in the sum of $286 for the failure of the canal company to complete its ditch so as to furnish plaintiff water to irrigate his land during the irrigation season of 1906 need not be here considered further than to say that that was a liability of the canal company on the first contract if at all and was extinguished by the execution of the second contract and which contract we hold as already stated superseded and operated to novate the first. As already stated plaintiff could not recover as against the defendants on the first contract and that being so the court committed harmless error, if at all, in sustaining the motion.

The case is remanded to the District Court of Big Horn County with directions to vacate the judgment and to enter judgment in favor of defendants.

Potter, J., and Beard, J., concur.